[No. 34800.  *En Banc.*  November 13, 1958.]

ALBERT F. HULL, *Appellant,* v. A. A. HUNT *et al.,*
*Respondents.*[1]

[1]Reported in 331 P. (2d) 856.

*Simmons, Simmons & Yates,* for appellant.

*Felix & Abel,* for respondents.

*A. C. Van Soelen, A. L. Newbould,* and *Hall, Cole & Lawrence, amici curiae.*

HILL, C. J.—The plaintiff brought this action to enjoin the construction of a proposed twelve-story apartment building on lots 11 and 12, block 22, G. Kinnear's supplemental addition to the city of Seattle. The basis for his action is that the proposed building will be in excess of the height limitation of thirty-five feet to which buildings in that particular area are limited by Seattle city ordinance No. 86867, passed by the city council January 26, 1958, effective February 27, 1958. There had been no height limitation prior to the effective date of this ordinance amending the Seattle zoning ordinance contrary to the recommendations of the city planning commission, which had opposed the imposition of any height limitation.

The defendants made three contentions: first, the plaintiff was not entitled to maintain an action for an injunction; second, a valid building permit had been issued for the proposed building February 26, 1958, the day before the height limitation ordinance became effective; third, the ordinance imposing the height limitation was invalid because the city council could not adopt such a height limitation over the objection of the city planning commission.

The trial court refused to grant an injunction, and dismissed the action. The plaintiff appeals. Each of the contentions made by the defendants before the trial court is urged again as a basis on which the trial court's dismissal of the action can be sustained on this appeal.

We agree with plaintiff, the appellant here, that he was entitled to maintain the action. There is no dispute as to appellant's ownership of property which will be diminished

in value to the extent of fifteen hundred dollars by construction under the building permit. Such diminution in value has been recognized by this court as constituting such special damage as to give a property holder sufficient interest to maintain an action to enforce a zoning ordinance. In *Park v. Stolzheise* (1946), 24 Wn. (2d) 781, 167 P. (2d) 412, the court said (p. 794),

"It is now generally held by the courts in this country that a property owner may pursue the remedy of injunction against the violation of a zoning ordinance, upon a showing of special damages to him by way of diminution in value of his property resulting from the violation of the ordinance. Notes, 129 A. L. R. (1940) 885, where the cases are collected."

See, also, *Kellogg v. Joint Council of Women's Auxiliaries Welfare Ass'n* (1954) (Mo.), 265 S. W. (2d) 374; *Nichols v. Rock Island* (1954), 3 Ill. (2d) 531, 121 N. E. (2d) 799; *Garrou v. Teaneck Tryon Co.* (1953), 11 N. J. 294, 94 A. (2d) 332; 8 McQuillin on Municipal Corporations (3d ed. 1949) § 25.351; Anno. 129 A. L. R. (1940), 885.

■■ In this situation we find no requirement of irreparable damages in the sense that monetary damages must be completely impossible of assessment. We are also satisfied that special damages are established here even though, as defendant argues, similar damages could probably be shown by numerous other property owners in the immediate neighborhood; this diminution of property value due to loss of view is a special damage different not only in degree but in kind from that damage suffered by the general public. See *Capitol Hill Methodist Church v. Seattle* (1958), 52 Wn. (2d) 359, 324 P. (2d) 1113.

Having concluded that the plaintiff was entitled to maintain the action, we are confronted with what seems to us the decisive issue in this case: Did the defendants' right to construct the twelve-story apartment building on lots 11 and 12, block 22, G. Kinnear's addition, become vested by virtue of the building permit issued the day before the zoning ordinance, imposing the height limitation, went into effect.

The defendant, A. A. Hunt, doing business as General Enterprises, Inc., had applied for the building permit January 16, 1958, and it was issued in the name of General Enterprises, Inc., on February 26, 1958. The trial court found that the defendants

". . . did not own, either individually or collectively, rights in all the subject property [lots 11 and 12 as heretofore indicated] at the time the application for a permit was filed . . ."

Had the defendants been the owners of the two lots, or had they acted in behalf of the owners, the case of *State ex rel. Ogden v. Bellevue* (1954), 45 Wn. (2d) 492, 275 P. (2d) 899, would have been decisive. We there held (p. 496),

". . . An owner of property has a vested right to put it to a permissible use as provided for by prevailing zoning ordinances. The right accrues at the time an application for a building permit is made. . . ."

The plaintiff urged in the trial court, and urges here, that only the owner, or someone having a right to build thereon, can make application for and obtain a valid permit to erect a building on real property. The Seattle building code contains no such requirement, and we find no merit in the contention. We further doubt the right of the plaintiff to raise the issue.

If a building permit has been issued to one other than the owner, it would seem that, for a party to assert the invalidity of that permit on the ground that it was granted to an improper applicant, that party must be the owner or have some right to the possession of the property. The plaintiff claims no ownership and no right of possession of lots 11 and 12.

The challenge that plaintiff is entitled to make against someone operating under a building permit, antedating the zoning ordinance now in effect, is based upon the proposition that the zoning ordinance amendment, making illegal the use contemplated under the outstanding permit, revokes the permit. The theory of the cases which so hold is that the police power, exercised for the benefit of the public

as a whole, supersedes the permit. The rule is stated as follows:

"The general rule is that permits for buildings and businesses are not per se protected against revocation in effect by subsequent zoning or changes in zoning prohibiting the building, business or use for which they have been issued. . . ." 8 McQuillin on Municipal Corporations (3d ed. 1949), § 25.156 at 357, 358.

This rule represents the weight of authority in this country, if there be added to it the modification or exception that where a permittee has changed his position in reliance on the permit before a zoning ordinance is enacted making illegal the use contemplated under the permit, he has gained a vested right which is recognized and protected by the courts.

We again quote McQuillin as setting forth the weight of authority as garnered from the decisions.

"Obviously, where a building has been erected, a business commenced or a use undertaken, with investment of capital, the purchase of equipment, employment of workers or the like, the question of the protection of that permit is then close if not tantamount to the question of the protection of a nonconforming use existing at the time that zoning restrictions become effective; and such a permit is entitled to protection against subsequent zoning or changes in zoning. Indeed, the general rule is that any substantial change of position, expenditures or incurrence of obligations under a permit entitles the permittee to complete the construction and use the premises for the purpose authorized irrespective of subsequent zoning or changes in zoning. Thus, when the granting of a building permit is followed by the letting of contracts and commencement of the work, a subsequent amendment to the zoning restrictions will not affect the permit. An alteration of a nonconforming structure having been lawfully authorized by permit and commenced, the permittee has a vested right to complete the work. . . ." 8 McQuillin on Municipal Corporations (3d ed. 1949), § 25.157 at 360.

There is no showing in the present case of any action taken, or use exercised under the permit before the amendment to the zoning ordinance. The permit was issued Feb-

ruary 26, 1958, and the ordinance, which by its terms fixed heights at thirty-five feet and hence precluded the construction of twelve-story apartment buildings, became effective one day later, February 27, 1958, having been passed by the city council January 26, 1958.

Notwithstanding the weight of authority, we prefer to have a date certain upon which the right vests to construct in accordance with the building permit. We prefer not to adopt a rule which forces the court to search through (to quote from *State ex rel. Ogden v. Bellevue, supra,*) "the moves and countermoves of . . . parties . . . by way of passing ordinances and bringing actions for injunctions"—to which may be added the stalling or acceleration of administrative action in the issuance of permits—to find that date upon which the substantial change of position is made which finally vests the right. The more practical rule to administer, we feel, is that the right vests when the party, property owner or not, applies for his building permit, if that permit is thereafter issued. This rule, of course, assumes that the permit applied for and granted be consistent with the zoning ordinances and building codes in force at the time of application for the permit.

The corporation counsel of the city of Seattle in his brief *amicus curiae* expresses the fear that such a rule—coupled with a holding that the applicant for the permit does not have to be the property owner—will result in speculation in building permits. However, the cost of preparing plans and meeting the requirements of most building departments is such that there will generally be a good faith expectation of acquiring title or possession for the purposes of building, particularly in view of the time limitations which require that the permit becomes null and void if the building or work authorized by such permit is not commenced within a specified period (one hundred and eighty days under the city of Seattle building code § 302 (h)).

Our conclusion is that the building permit, issued in the name of General Enterprises, Inc., on February 26, 1958, was not revoked by ordinance No. 86867, fixing a height limitation, which became effective February 27, 1958.

The defendants have attacked ordinance No. 86867 as invalid on the ground that it was adopted contrary to the recommendation of the Seattle planning commission. Our disposition of this case makes unnecessary any consideration of this issue.

The judgment of the trial court is affirmed.

ALL CONCUR.

[1]Reported in 331 P. (2d) 859.