[No. 49405-3.   En Banc.   February 16, 1984.]

HERMAN M. ALLENBACH, *Respondent,* v. THE CITY OF TUKWILA, ET AL, *Appellants.*

STAFFORD, J., did not participate in the disposition of this case.

194

*LeSourd & Patten, Lawrence E. Hard, Daniel D. Woo,* and *Jeffrey C. Wishko,* for appellants.

*Haggard, Tousely & Brain, Joel E. Haggard,* and *William H. Block,* for respondent.

DORE, J.—In 1977, the City of Tukwila began serious discussions regarding changes in its comprehensive code. During this time, it adopted a building permit moratorium imposing a special waiver process on all building permit applications within the geographic area of the environmental base map of the Tukwila comprehensive land use policy plan. This moratorium was extended three times through December 1, 1980.

I

During the fall of 1981, respondent Dr. Herman M. Allenbach entered into an earnest money agreement to purchase property known as Slade Way in Tukwila. The property is located at the I–5/I–405 interchange, close to the heavily developed commercial area of Southcenter. At the time, the property was zoned for multi–family development.

Allenbach was aware of the potential downzoning of the property. He believed, however, that once the Tukwila City

Council became aware of its undesirability for single–family development, the proposed downzone would be rejected.

During Allenbach's preparation of engineering analyses and construction of a model development, the building permit moratorium previously imposed by Tukwila expired, and it wasn't subsequently extended.

On March 16, 1982, the Tukwila City Council passed ordinance 1247 which, among other actions, downzoned Allenbach's property to single–family residential.

Allenbach, in preparing his permit application, expended in excess of $17,000 on engineering, consulting and legal fees as well as model costs, not including land costs.

Ordinance 1247 became effective on May 4, 1982. One day before, Allenbach filed his building permit application. The parties stipulated that the type of development sought by the permit application was permitted under the zoning code in effect at the time the permit application was filed. They further stipulated that the application was substantially complete and complied with Tukwila's applicable codes and regulations.

Tukwila refused to process Allenbach's building permit application, maintaining that the filing of such application, with knowledge that the intended development would be a legal nonconforming use under ordinance 1247, constituted bad faith which it claimed was an exception to the vested rights rule and justified Tukwila's refusal to process the subject permit application.

The trial court issued a writ of mandamus ordering Tukwila to process Allenbach's permit application under the zoning in effect on the date the application was filed. That processing includes environmental review and the imposition by Tukwila of appropriate conditions.

## ISSUE

Does a building permit applicant have a vested right to process his or her permit application under zoning in effect on the date application is filed?

The issue in this case was fully disposed of in *State*

*ex rel. Hardy v. Superior Court,* 155 Wash. 244, 284 P. 93 (1930) (rejecting the "pending zoning change doctrine") and *State ex rel. Ogden v. Bellevue,* 45 Wn.2d 492, 275 P.2d 899 (1954) (relying on *Hardy* in establishing the Washington "date of application" vested rights rule).

In *Hardy,* certain land owned by a Mr. Berlin was zoned residential. By ordinance passed November 12, 1929 and effective December 21, 1929, the City Council reclassified the land for business use. Neighboring landowners challenged the zoning reclassification. On December 23, 1929, the Seattle City Council passed an ordinance revoking the business classification and restoring the residential classification. Under state law, however, the ordinance could not become effective until 30 days after it had been signed by the mayor. Thus, after December 26, Berlin was faced with a situation in which his land was temporarily classified for business but was also subject to a "pending ordinance," restoring its residential classification to become effective January 25, 1930.

The neighbors successfully secured an injunction against any building permit that might be sought during this interim period, from the superior court.

The Supreme Court reversed, holding that the landowner's rights must be based on the ordinance *in effect* on the date he seeks his permit, not an ordinance that is merely passed but not yet effective.

A statute speaks from the time it goes into operation and not from the time of passage.

. . .

. . . Prior to January 25, 1930, no rights may be acquired under the last ordinance, which was passed by the council December 23, 1929, *nor is that ordinance operative before that date to divest the relators of such rights as they may have under the terms of the November ordinance.*

(Italics ours.) *Hardy,* at 248–49. This court squarely held that a permit applicant was entitled to processing of his application under the ordinance *in effect* at the time of his application.

In *State ex rel. Ogden v. Bellevue,* 45 Wn.2d 492, 496, 275 P.2d 899 (1954), we stated:

> An owner of property has a vested right to put it to a permissible use as provided for by prevailing zoning ordinances. *The right accrues at the time an application for a building permit is made. State ex rel. Hardy v. Superior Court, supra. The moves and countermoves of the parties* hereto by way of passing ordinances and bringing actions for injunctions, *should and did avail the parties nothing. A zoning ordinance is not retroactive so as to affect rights that have already vested. State ex rel. Hardy v. Superior Court, supra.*

(Italics ours.)

Under *Ogden,* a building permit applicant has a vested right to processing of his application under the zoning in effect at the time his application is filed, and under *Hardy* the existence of a reclassifying ordinance, passed but not yet effective, does not affect the vesting of the applicant's rights. In every subsequent case since *Hardy* and *Ogden,* this court has adopted the zoning concept of these two cases.

## II

In *Hull v. Hunt,* 53 Wn.2d 125, 331 P.2d 856 (1958), the defendant applied for a building permit on January 16, 1958, just days before the Seattle City Council passed a zoning ordinance imposing building height limitations that would prevent construction of the proposed project. A permit based upon the application was issued the day before the new zoning went into effect. *Hull,* at 128. Neighboring property owners sought an injunction. In rejecting the challenge, this court noted that the general rule in the United States is that permits for buildings are not per se protected against revocation by subsequent zoning, except where a permittee has changed his position in reliance on the permit before the zoning ordinance is enacted. Thus, under that rule, the courts in each instance must hold a trial on the issue of a "change in position" (or "good faith reliance"). *See Hull,* at 128–29.

This court recognized that in *Hull,* at page 129, "[t]here is no showing in the present case of any action taken, or use exercised under the permit before the amendment to the zoning ordinance." Under the "change in position" rule, the applicant's rights would not have vested. Nevertheless, the court declined to impose "substantial change of position" or "good faith reliance". Instead, the court adopted a "date of application" test that avoids the morass and uncertainties of trial on "good faith" and "reliance". The court held:

> Notwithstanding the weight of authority, *we prefer to have a date certain* upon which the right vests to construct in accordance with the building permit. We prefer not to adopt a rule which forces the court to search through (to quote from *State ex rel. Ogden v. Bellevue, supra,*) "the moves and countermoves of . . . parties . . . by way of passing ordinances and bringing actions for injunctions"—to which may be added the stalling or acceleration of administrative action in the issuance of permits—to find that date upon which the substantial change of position is made which finally vests the right.

(Italics ours.) *Hull,* at 130.

In *Hull,* this court adopted a standard that establishes a clear, easily determined rule that is practical to administer.

> The more practical rule to administer, we feel, is that *the right vests when the party, property owner or not, applies for his building permit,* if that permit is thereafter issued. This rule, of course, assumes that the permit applied for and granted be consistent with the zoning ordinances and building codes *in force* at the time of application for the permit.

(Italics ours.) *Hull,* at 130.

In *Hass v. Kirkland,* 78 Wn.2d 929, 481 P.2d 9 (1971), the City of Kirkland adopted an R3–W zoning classification for Hass' land that forbade a project Hass was contemplating. This court ruled in Hass' favor, saying:

> On March 7, 1966, the respondent adopted the land use classification to be known as R3–W, which would not apply to the appellant's proposed apartment *if he filed his application for a building permit prior to the effective date of the R3–W classification. Ogden v. Bellevue,*

45 Wn.2d 492, 275 P.2d 899 (1954); *Hull v. Hunt,* 53 Wn.2d 125, 331 P.2d 856 (1958).

(Italics ours.) *Hass,* at 931.

Similarly on point is the recent case of *Norco Constr., Inc. v. King Cy.,* 97 Wn.2d 680, 649 P.2d 103 (1982) where the developer filed an application for preliminary plat approval which conformed with existing codes but conflicted with a local community plan proposed by King County. Because of the conflict, the County refused to act on the application. This court held that under then–existing state law, the applicant's rights to processing under existing laws had vested upon expiration of the statutory 90–day processing period (because of the complexity of plat applications, the court adopted the 90–day vesting rather than the "date of filing" vesting used in building permits). This court held that the County was prohibited from considering the proposed plan in processing the application. ("[S]uch proposed changes are not a valid basis for disapproval of a plat application within the time period required by statute.") *Norco,* at 682.

In *Norco,* the zoning change was pending when the application was filed. The court not only refused to allow that as a ground for denying the applicant's right to processing under existing zoning, it prohibited the County from even considering the proposed change in ruling on the application. *See, e.g., Parkridge v. Seattle,* 89 Wn.2d 454, 457, 573 P.2d 359 (1978), where the building permit application was filed in response to a petition for a restrictive rezone, which rezone was subsequently adopted.

The cost of submitting an application and the time limitation on commencing construction after a permit is issued are sufficient commitments to eliminate any need for the courts to inquire into the "good faith" of the applicant. Both of these factors are present here. First, over $17,000 has been expended by Allenbach in the preparation of the application. Second, Tukwila ordinance 1152 requires an applicant to commence construction within 180 days of the issuance of the permit. In light of these required commit-

ments, we reject the "good faith" requirement as an exception to the vested rights rule.

Throughout the history of the vested rights doctrine, from *Hardy* through *Ogden, Hull, Hass, Norco,* and *Parkridge,* this court has rejected any "pending zoning change" exception to the vested rights doctrine.

The vesting of rights depends only on a showing that the application is complete and complies with the zoning ordinances and applicable codes in force at the time of application. The parties have stipulated here that Allenbach's application meets the compliance and completeness requirements. See Stipulation, paras. 2, 7. Clerk's Papers, at 51–53.

CONCLUSION

We affirm the validity of the Washington vested rights rule requiring that a zoning ordinance be operative before it deprives landowners of their rights. The doctrine has worked well and contains ample protection for municipalities. The decision of the trial court, ordering the City of Tukwila to process Allenbach's building permit application under the zoning in effect on the date the application was filed, is affirmed.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.