# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 1, 2006

130721

MICHAEL DORMAN,
          Plaintiff-Appellant,
v

TOWNSHIP OF CLINTON,
          Defendant-Appellee.
_____/

SC: 130721
COA: 256362
Macomb CC: 02-004069-CZ

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

On order of the Court, the application for leave to appeal the February 7, 2006 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

YOUNG, J., concurs and states as follows:

I concur in the order denying leave to appeal. Plaintiff is a real estate developer who purchased the property in question in 2001 with intent to continue using the property as it was zoned at the time of purchase. During the planning stage, defendant rezoned the property from light industrial to residential. The zoning ordinance in effect when plaintiff purchased the property authorized use of the property as light industrial. However, the township's master plan, which had not been updated to reflect the zoning ordinance, authorized residential use for the property. Thus, in changing the zoning to residential, the township conformed its ordinance to its master plan.

Plaintiff claims, as a result of the anticipated diminished economic return, that the rezoning constitutes a regulatory taking. However, plaintiff has no vested interest in the rezoning of the property upon which to claim a regulatory taking. In Michigan, in order to have a vested interest in the rezoning of the property, plaintiff would need to have secured a building permit for the construction necessary to take advantage of the existing zoning classification *and* expended a substantial investment in performing that construction. See, e.g., *Bevan v Brandon Twp,* 438 Mich 385, 402 (1991); *Gackler Land Co, Inc v Yankee Springs Twp,* 427 Mich 562 (1986); *City of Lansing v Dawley*, 247 Mich 394, 396 (1929). Because plaintiff has met neither requirement, he does not have a vested interest in the rezoning of the property and may not claim a regulatory taking.

MARKMAN, J., concurs and states as follows:

I concur in the order denying leave to appeal.  Plaintiff bought property that was zoned as light industrial, and planned to adapt the building on the property for light industrial use as a storage facility.  He submitted a site plan to the township planning department and removed most of the building's interior fixtures.  However, before plaintiff received a building permit or began construction, the township board voted to rezone the property for residential use only.

In order for this Court to evaluate a claim that a zoning ordinance constitutes a taking of property, a plaintiff must satisfy the rule of finality.  This rule requires a showing that "'the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.'"  *Paragon Properties Co v City of Novi*, 452 Mich 568, 579 (1996), quoting *Williamson Co Regional Planning Comm v Hamilton Bank*, 473 US 172, 191 (1985).  Because plaintiff here has not affirmatively demonstrated that he sought a special land use permit, rezoning, or a land use variance, *Paragon Properties, supra* at 574, plaintiff has failed to satisfy the rule of finality.  For this reason, I concur in the order denying leave to appeal.

However, I write separately to observe that this Court, in my judgment, should revisit the current rule that vests a property owner's right in existing zoning only after a building permit has been issued and "substantial investment" has been made with regard to the property.  *City of Lansing v Dawley*, 247 Mich 394 (1929).  Although this is fairly described as the "majority rule," among the states, it has increasingly been replaced.  Under one alternative rule, a property owner's right in existing zoning vests when the local authority grants final approval, without the additional requirement that an owner undertake a "substantial investment" on the property.  See, e.g., 53 Pa Stat Ann tit, § 10508(4)(ii) (2006); Ariz Rev Stat Ann 9-1202(G) (2006).  Under another alternative rule, a property owner's right in existing zoning is vested as of the time that a project application is made.  *Erickson & Assoc, Inc v McLerran*, 123 Wash 2d 864, 867-868 (1994).  In rejecting the majority rule, the Washington Supreme Court has stated:

> We prefer not to adopt a rule which forces the court to search through . . . "the moves and countermoves of . . . parties . . . by way of passing ordinances and bringing actions for injunctions"—to which may be added the stalling or acceleration of administrative action in the issuance of permits—to find that date upon which the substantial change of position is made which finally vests the right. The more practical rule to administer, we feel, is that the right vests when the party, property owner or not, applies for his building permit, if that permit is thereafter issued.  [*Hull v Hunt*, 53 Wash 2d 125, 130 (1958) (quoting *State ex rel Ogden v City of Bellevue*, 45 Wash 2d 492, 496 ([1954])).]

See also, Cal Gov't Code § 66498.1(b) (2006); Tex Local Gov't Code § 245.002 (2006).

What is particularly pertinent is that the majority rule evolved at a time three-quarters of a century ago during which a single building permit may have been all that was required for even a major building project. Since then, however, the process of securing such permits has changed drastically in most jurisdictions, including in Michigan. Major building projects will often require multiple permits from multiple federal, state, and local agencies. Yet, the building permit on which the current rule hinges is only the final permit issued in this process. See, e.g., *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 62 (1989); see also Overstreet & Kirchheim, *The quest for the best test to vest: Washington's vested rights doctrine beats the rest*, 23 Seattle Univ L R 1043, 1053-1054 (2000). One commentator, for example, has related a project that required 65 separate permits from 12 separate agencies. Hagman, *The vesting issue: the rights of fetal development vis a vis the abortions of public whimsy*, 7 Envtl Law 519, 538 (1977). Under the present rule, property owners must expend considerable time, money, and effort to secure multiple permits before any right to existing zoning vests, placing these expenditures potentially at risk of adverse political and administrative decisions during the entire process.

Michigan's current rule implicates both due process guarantees and the stability and predictability of property rights. A rule that leaves a property owner's ability to build uncertain or tentative until late in an extended building process may act as a deterrent to the exercise of property rights, because an owner could be forced to expend considerable sums of money absent any assurance that the local zoning authority will not alter existing zoning at the last minute. Moreover, such a rule raises questions concerning at what point a change in zoning can fairly be construed as being effectively retroactive in character.

The building permit process has changed dramatically since the majority rule on vesting was originally adopted in Michigan. As a result, the current rule raises both practical and due process concerns. Balanced with this are considerations that pertain to the ability of local jurisdictions to exercise their zoning authority in a flexible and plenary manner. In an appropriate case, I believe that this Court should more fully consider the merits of alternative rules of vesting and determine whether our current rule should be maintained.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 1, 2006

Clerk

p1128