[No. 9156–5–I.   Division One.   May 4, 1981.]

NORCO CONSTRUCTION, INC., *Respondent,* v. KING COUNTY, ET AL, *Appellants.*

*Norm Maleng, Prosecuting Attorney,* and *Anne Bradley* and *Susan Agid, Deputies,* for appellants.

*Inslee, Best, Chapin, Uhlman & Doezie, P.S.,* and *Richard U. Chapin,* for respondent.

ANDERSEN, J.—King County and the King County Council appeal from a judgment compelling the Council to act on a preliminary plat application under the zoning laws existing at the time the preliminary plat application was completed.

The County and the Council appealed to the State Supreme Court. That court directed the case to be transferred to this court for decision. We affirm the trial court's decision.

## BACKGROUND—STATE AND LOCAL SUBDIVISION CONTROLS

A brief look at the nature of the controls governing the subdivision of land may be helpful to an understanding of the issues presented. The state legislature has by statute imposed subdivision controls to insure the orderly development of new areas for which new streets, utility services, drainage, sewers and the like will be necessary. These controls are stated in RCW 58.17. Local ordinances, regulations and procedures supplement the state law.

One who wishes to subdivide property initiates the process by filing a preliminary plat (essentially a map of the general layout of the proposed subdivision) and an application for its approval by the legislative body of the city, town or county. RCW 58.17.070. The local planning body or designated officials then review the proposed subdivision

for compliance with adopted criteria and standards and make recommendations to the legislative body. RCW 58.17.100.

A hearing is then held on the plat application. In King County, the King County Council has, by ordinance, delegated the hearing function on preliminary plats to a zoning and subdivision examiner who makes a written report and recommendation to the Council as the legislative body of the County. The Council makes the final decision on each proposed plat. Planning staff review and the hearing or hearings before the examiner are designed to provide an extensive review of each preliminary plat before it is ultimately considered by the King County Council. *See* King County Code 20.24. Once preliminary plat approval is received, an applicant ordinarily may proceed to construct improvements and prepare the final plat in compliance with it. The final plat also must be reviewed by the legislative body. Once approved, it is filed for public record. RCW 58.17.170.

### FACTS OF CASE

In May 1977, Norco Construction, Inc. (applicant) filed a preliminary plat application for a subdivision that it called Star View Acres. In force at the time was the County's comprehensive plan, enacted in 1964, and zoning ordinances implementing that plan.

The applicant's proposed plat is for 75 acres in the Soos Creek Plateau area. That is a 73–square–mile area located east of the cities of Renton, Kent and Auburn and above the Green River Valley in the hills and ridgelands of southwest King County. It is one of the 13 community planning areas in the county.

Since 1975, a proposed Soos Creek Plateau Communities Plan (Soos Creek Plan) had been under development. The plan is a comprehensive and detailed update of land use in the area. The County anticipated that when completed it would be added as an amendment to the County's comprehensive plan. The Soos Creek Plan was not adopted until

November 1979, however, after the trial court entered its judgment in this case.

The course followed by the applicant's preliminary plat and application, after they were filed in May of 1977, was as follows.

Hearings were held on the applicant's proposed plat before the examiner. On October 11, 1977, the examiner made a written report and recommendation to the Council. In it he concluded that the proposed subdivision conformed with the goals and objectives of the County's existing comprehensive plan, the subdivision and zoning codes and other land use controls and policies then in effect. He recommended approval of the proposed plat subject to certain conditions not relevant here. The examiner also pointed out in his report, however, that the 1 acre per lot density of the proposed plat conflicted with the 5 acres per lot density of the July 1977 draft of the proposed Soos Creek Plan. No other conflict with the proposed Soos Creek Plan was specifically identified. No appeal was taken from the examiner's decision.

The examiner's recommendation was placed on the Council's agenda for action at its October 31, 1977 meeting. Final action was not taken on the proposed plat at that time. As one Council member stated in his affidavit, "[t]he full Council referred the plat of Star View Acres to the Planning and Community Development Committee because it is not consistent with the draft [Soos Creek Plan]." The proposed plat of Star View Acres has not been considered by the Council since that time.

In November 1977, the zoning and subdivision examiner notified the applicant that health department approval of the applicant's method of water supply and sewage disposal would also be required and that the plat would not be considered by the Council until that approval was received. Health department approval was obtained by January 8, 1979, and the proposed plat was again ready for Council consideration. Action on the proposed plat, however, continued to be deferred indefinitely.

As applicant's appellate brief expresses it, "with interest payments growing and patience declining," this action to compel the Council to act on the preliminary plat application was commenced on February 28, 1979.

When the case came on for trial before the trial court, it was by consent tried on affidavits, it evidently being the feeling of the parties and the trial court that the critical facts were not in dispute and that the determinative issues were legal rather than factual. We agree.

On April 26, 1979, following the trial, judgment was entered by the trial court:

Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. The King County Council shall consider [the applicant's] application for preliminary plat approval on the basis of the zoning ordinances, comprehensive plan and status of procedure in effect at the time the preliminary plat application was completed (by Health Department letter recommending approval dated January 8, 1979).

2. The King County Council is hereby ordered to place the proposed preliminary plat of Star View Acres, Building and Land Development Division File No. 777–28, on its [next] agenda . . . and there and then to take action thereon by concurring with or refusing to concur with the report and recommendation of the Hearing Examiner to approve said preliminary plat subject to the specified conditions.

3. The King County Council should be and it hereby is prohibited from considering or using as a basis for, or applying, the proposed Soos Creek Community Plan or proposed area–wide rezoning, in determining whether to concur or not to concur in the report and recommendation of the Hearing Examiner on the preliminary plat of Star View Acres . . .

Four issues are dispositive of this appeal.

### ISSUES

ISSUE ONE. May the Council informally defer taking action approving or disapproving the preliminary plat because it is not in conformity with proposed changes to the County's comprehensive plan and zoning ordinances?

ISSUE TWO. Is mandamus appropriate to order the County Council to act on the preliminary plat of a proposed subdivision?

ISSUE THREE. Prior to approval of an applicant's preliminary plat of a proposed subdivision of land, does the applicant acquire any vested rights; and, if so, when does such vesting occur?

ISSUE FOUR. Under the limited vested rights rule here enunciated, precisely what is the right that vests in the applicant?

### DECISION

ISSUE ONE.

CONCLUSION. Under state statute, RCW 58.17.140, the County Council was required to timely act on the preliminary plat and no other provision of state or local law authorized the kind of informal indefinite deferral action on the preliminary plat that occurred here.

A common complaint of subdividers and developers everywhere is that plat review procedures often involve harmful and expensive delay. As a consequence, legislatures frequently designate the time limits within which plats must be either approved or disapproved. In some states a plat will be deemed approved or presumed to be approved if the legislative body does not act within the prescribed time, usually 30 to 60 days. 4 R. Anderson, *Zoning* § 23.16 (2d ed. 1977); 3 E. Yokley, *Zoning* § 17–7 (4th ed. 1979).

This state has a timeliness statute that requires preliminary plats of proposed subdivisions to be approved, disapproved or returned for modification or correction within 90 days from the date of filing, unless the applicant consents to an extension; if, however, an environmental impact statement is required, the time necessary for its preparation is not included within the 90–day period. RCW 58.17.140.[1] The Council did not act in accordance with the timeliness statute here.

---

[1]The timeliness statute reads as follows:

The County and Council argue, however, that authority to defer the proposed plat in the fashion that was done here is implied from the authority to approve or disapprove preliminary plats.

█ █ Statutory language must be interpreted with reference to the general object and purpose of the legislation. *Strenge v. Clarke*, 89 Wn.2d 23, 29, 569 P.2d 60 (1977). The obvious purpose of RCW 58.17.140 is to prevent delay resulting from government inaction on proposed preliminary plats. *See* 4 R. Anderson, *supra*; 3 E. Yokley, *supra*. Absent formal adoption of a valid ordinance preserving the status quo according to one of the means authorized by statute or recognized by law, the Council may not indefinitely defer action on a preliminary plat pending adoption of a proposed community plan. The authority to defer in that fashion cannot fairly be implied from the statute.

The County also argues that the Council has the inherent right to exercise its discretion and defer action. We disagree.

King County operates under a home rule charter and as such has broad authority as to how it governs. The exercise of its power, however, must be consistent with the constitution and state laws. Const. art. 11, § 4 (amendment 21); *Ford v. Logan*, 79 Wn.2d 147, 153, 483 P.2d 1247 (1971). Although it is true that under state statutes, notably RCW 58.17.100–.120, the Council is given wide discretion to approve or disapprove a preliminary plat application, that authority read together with RCW 58.17.140 establishes

---

"*Preliminary plats of any proposed subdivision and dedication shall be approved, disapproved, or returned to the applicant for modification or correction within ninety days from date of filing thereof unless the applicant consents to an extension of such time period: Provided,* That if an environmental impact statement is required as provided in RCW 43.21C.030, the ninety day period shall not include the time spent preparing and circulating the environmental impact statement by the local government agency. Final plats and short plats shall be approved, disapproved, or returned to the applicant within thirty days from the date of filing thereof, unless the applicant consents to an extension of such time period. Ordinances may provide for the expiration of approval given to any preliminary plats." (First italics ours.) RCW 58.17.140.

only that the Council must exercise its discretion in a timely manner. It did not do so here.

The Council's objective in deferring the applicant's proposed preliminary plat until final adoption of the Soos Creek Plan was to allow it to consider all proposed plats and properties in the Soos Creek plateau area in a comprehensive fashion. The trial court expressed complete sympathy with that objective, and correctly so. Certainly the task of the County and Council in formulating and adopting the Soos Creek Plan, as well as 12 other equally comprehensive and detailed community plans, is a staggering one.

Nevertheless the County had legal means available to preserve the status quo while the Soos Creek Plan was being formulated and adopted, but it did not use them. The Planning Enabling Act of the State of Washington authorizes a county to adopt as an emergency measure an interim zoning map. RCW 36.70.790. Such interim zoning can serve "to safeguard the public welfare pending completion of the zoning scheme and as a safeguard against manipulation of land uses in contemplation of a final zoning law." *Smith v. Skagit County,* 75 Wn.2d 715, 739, 453 P.2d 832 (1969).[2]

The record before us reflects that an ordinance deferring consideration of proposed plats in community planning areas was under consideration by the King County Council in 1977 but, for reasons not appearing in the record, was not enacted.

The County and Council contend that King County ordinance No. 3579 provided authority for deferring action on the proposed plat. Ordinance No. 3579 relates only to sewer and water supply systems.[3] The deferral provisions of the

---

[2]Arguably also, an ordinance establishing a moratorium on plat approvals pending adoption of the Soos Creek Plan could also have been adopted, as the trial court suggested. *See, e.g., Rubin v. McAlevey,* 54 Misc. 2d 338, 282 N.Y.S.2d 564 (1967); *New Jersey Shore Builders Ass'n v. Ocean,* 128 N.J. Super. 135, 319 A.2d 255 (1974).

[3]When enacted, the title of King County ordinance No. 3579 read:

AN ORDINANCE relating to the adequacy of public sewer and water supply systems, the review of preliminary and final plats, and the approval of sewer

ordinance relate only to that purpose. Nothing in the record or examiner's report and recommendation on the preliminary plat in this case suggests any problems or inadequacies with the sewer and water supply systems. Moreover, this ordinance was enacted in February 1978, 3 months after the Council's October 31, 1977 decision to indefinitely defer action on the proposed plat. Therefore the Council did not rely on that ordinance as authority to defer action at its October 31, 1977 meeting. Nothing in the record suggests that this ordinance was later invoked by the Council as authority for its continued deferral of action on this proposed plat, after the health department gave its approval to the plat. Ordinance No. 3579 is not applicable to this case.

ISSUE TWO.

CONCLUSION. Mandamus will lie to compel performance of a legal duty to act, therefore, the trial court did not err when it ordered the County Council to act on the preliminary plat after expiration of the 90–day statutory period within which it was required to act.

█ Although mandamus will not lie to control the exercise of discretion, it will lie to require that discretion be exercised. *Bullock v. Superior Court,* 84 Wn.2d 101, 103, 524 P.2d 385 (1974).

The "ninety days from date of filing" within which the proposed preliminary plat had to be "approved, disapproved, or returned to the applicant for modification or correction", RCW 58.17.140, had run by October 31, 1977, when the preliminary plat application was placed on the Council's agenda together with the examiner's recommen-

---

and water service in certain district comprehensive plans, and adding new sections to the King County Subdivision Code, K.C.C. 19.08 and K.C.C. 13.24.
Section 1 of the ordinance states in part:
The purpose of this ordinance is to coordinate the approval of plats requiring public sewer and water facilities with the Council's determination of geographic areas appropriate for such services.

dation that it be approved.[4] Since the preliminary plat application had not been timely approved, disapproved or returned for modification by the Council, as required by statute, mandamus did lie and the trial court did properly order the Council to promptly exercise its discretion on the proposed plat.[5]

ISSUE THREE.

CONCLUSION. When the statutory time within which the legislative body of a political subdivision of the State must act on a preliminary plat has expired without the required action being taken, the applicant then acquires certain vested rights in connection with the plat application.

In the leading case of *State ex rel. Ogden v. Bellevue*, 45 Wn.2d 492, 275 P.2d 899 (1954), the then newly incorporated City of Bellevue tried to avoid issuing a building permit to a property owner by rezoning the property and then using the rezone as a basis for rejecting the building permit to which the owner otherwise would have been entitled. The State Supreme Court held that the City could not do that, stating:

> A property owner has a vested right to use his property under the terms of the zoning ordinance applicable thereto.

*State ex rel. Ogden v. Bellevue, supra* at 495.

And, further:

> An owner of property has a vested right to put it to a

---

[4]We need not consider the possible effect of the examiner's later directive requiring that the applicant provide health department approval of the water supply and sewage disposal methods. That directive was ultimately complied with by January 8, 1979. On April 26, 1979, when the trial court entered its judgment granting mandamus, over 90 days had also elapsed from that January 8, 1979 date.

[5]We observe that although the timeliness statute speaks in terms of preliminary plats being "approved, disapproved, or returned to the applicant for modification or correction" within 90 days, RCW 58.17.140, paragraph 2 of the trial court's judgment set out earlier in this opinion speaks only in terms of "concurring with or refusing to concur with" the examiner's recommendation. Since the parties in their briefs have not discussed the significance, if any, of that difference, we need not do so.

permissible use as provided for by prevailing zoning ordinances. The right accrues at the time an application for a building permit is made. *State ex rel. Hardy v. Superior Court* [155 Wash. 244, 284 P. 93 (1930)]. The moves and countermoves of the parties hereto by way of passing ordinances and bringing actions for injunctions, should and did avail the parties nothing. A zoning ordinance is not retroactive so as to affect rights that have already vested. *State ex rel. Hardy v. Superior Court, supra.*

*State ex rel. Ogden v. Bellevue, supra* at 496.

These principles were more fully developed in *Hull v. Hunt,* 53 Wn.2d 125, 331 P.2d 856 (1958) and have consistently been followed in land use permit cases since. *See Beach v. Board of Adjustment,* 73 Wn.2d 343, 347, 438 P.2d 617 (1968) (conditional use permit); *Juanita Bay Valley Community Ass'n v. Kirkland,* 9 Wn. App. 59, 83–85, 510 P.2d 1140 (1973) (grading permit); *Talbot v. Gray,* 11 Wn. App. 807, 811, 525 P.2d 801 (1974) (substantial development permit under the Shoreline Management Act of 1971); and *Ford v. Bellingham–Whatcom County Dist. Bd. of Health,* 16 Wn. App. 709, 714–15, 558 P.2d 821 (1977) (septic tank permit).

The County and Council argue that the vesting rule should not apply at all in subdivision of land cases such as the present one. They cite a number of cases from other jurisdictions to that effect. Such cases are not in point, however, because the vesting rule enunciated in the foregoing cases from this jurisdiction is admittedly a minority rule.

The purpose of the vesting rule is to establish a date certain upon which the owner's right to use his or her property in a particular way becomes fixed so that in determining the applicable law the court is not required to search through the moves and countermoves of the parties, *State ex rel. Ogden v. Bellevue, supra,* and "the stalling or acceleration of administrative action in the issuance of permits" in each case, *Hull v. Hunt, supra* at 130.

*State ex rel. Ogden v. Bellevue, supra,* and its progeny

are premised on the principle of fairness that local governments should not be permitted to delay approving an owner's land use permit on the one hand, while on the other hand moving ahead to rezone the property so as to be able to deny the requested permit.

The purpose of the vesting rule and the principle of fairness underlying it, as stated in the land use permit cases, are equally applicable in subdivision of land cases. In both situations it is land use regulation which is involved. In both situations the property owner is asking no more than official permission to use his or her own land in accordance with the zoning laws.

The County and Council argue that the vesting rule in the land use permit cases is premised on the assumption that no discretion is involved in cases where it is applied. That is incorrect. *See Beach v. Board of Adjustment, supra; Talbot v. Gray, supra.*

The County and Council also argue that only the rights granted under RCW 58.17.170 are vested. That statute relates only to the use to which land is put after final plat approval. It has no bearing on preliminary plat approvals.

Even if a vesting rule applies to plat applications, the County and Council contend that because of the complex and time–consuming nature of the process of completing and taking action on preliminary plat applications, a preliminary plat applicant's rights should not be held to vest on filing as land permit applicants' rights do. We agree. The technical staff review and hearing stages of plat approval do require time. Preliminary plats and applications are often changed or modified in the process of completing them before presentation to the legislative body for approval. The time required for this process, however, clearly has been contemplated and provided for by the timeliness statute, RCW 58.17.140. The rights that vest, therefore, do not vest at the time the application and preliminary plat are filed, but vest when the time limits prescribed by the timeliness statute have expired.

The County Council must act on the preliminary plat

under the zoning ordinances and procedures in effect at the time it should have acted as required by statute. To rule otherwise would be to put a premium on the improper deferral of action on preliminary plats past the 90–day time limit. Obviously, if an owner's preliminary plat and application have not been completed within the required time and face disapproval by the County Council, the owner would in all likelihood agree to a continuance. A continuance with the consent of the applicant would extend the 90–day limit by the period of the agreed continuance as would the time spent preparing and circulating an environmental impact statement. RCW 58.17.140.

ISSUE FOUR.

CONCLUSION. The right which vests in the preliminary plat applicant is not the right to preliminary plat approval. What vests is the applicant's right to have the preliminary plat application considered under the zoning ordinances and procedures existing at the time the application should have been acted upon.

Some of the land use permit cases suggest that once the applicant's rights to a permit vest, then a permit must issue. *See State ex rel. Ogden v. Bellevue, supra.* A close reading of such cases makes it clear, however, that in those cases there was no issue as to the applicant's right to the permit, but only as to whether the applicant's rights had vested under the law in effect at the time.

The vesting rule must, of necessity, be otherwise in preliminary plat application cases where substantial modification in the course of completing applications is customary and where the exercise of considerable discretion is involved throughout the process. The applicant's vested right, therefore, is the right to have the preliminary plat and application acted upon under the zoning ordinances and procedures existing at the time it should have been acted upon. *See Beach v. Board of Adjustment, supra* at 347; *Juanita Bay Valley Community Ass'n v. Kirkland, supra* at 83–84.

When passing on a preliminary plat application, the

County Council must determine if it conforms to the adopted comprehensive plan, planning standards and specifications. *See* RCW 58.17.100; King County Code 20.24.200. Although the Council exercises administrative discretion in the process, it is following a plan and ordinances already adopted by itself as a legislative body and is not prescribing new policy. In passing on a preliminary plat application, therefore, the Council is acting in an administrative capacity rather than in a legislative capacity. *See Durocher v. King County*, 80 Wn.2d 139, 152, 492 P.2d 547 (1972); *Pentagram Corp. v. Seattle*, 28 Wn. App. 219, 224, 622 P.2d 892 (1981). As such, the Council's decision on the preliminary plat application is subject to review by certiorari, RCW 7.16.030–.140, for arbitrary and capricious conduct, RCW 58.17.180.

The case of *Jones v. Woodway*, 70 Wn.2d 977, 425 P.2d 904 (1967) relied on by the County and Council is not in point. That case holds that absent any local zoning ordinances a municipality may exercise its discretion and disapprove a proposed plat. It does not suggest that existing zoning ordinances, rules and regulations may be ignored.

As the facts of the present case underscore, a property owner cannot reasonably be expected to design a proposed plat that will comply with an emerging, proposed and unadopted comprehensive plan that is subject to modification.

In the present case, the trial court did not order the County Council to approve the applicant's preliminary plat. The trial court's judgment, set out above, required the Council to consider the application for preliminary plat approval on the basis of the zoning ordinances, comprehensive plan and rules of procedure in effect on January 8, 1979 when the preliminary plat application was completed.

The trial court did not err in entering the judgment that it did.

Affirmed.

JAMES, C.J., and WILLIAMS, J., concur.

Reconsideration denied July 22, 1981.

Review denied by Supreme Court November 19, 1981.